UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MICHAEL RINALDI,<br>      *Plaintiff,*<br>   *v.*<br>TOWN OF WOLCOTT,<br>      *Defendant.* | Civil No. 3:13cv485 (JBA)<br><br>November 13, 2014 |

**RULING GRANTING MOTION FOR SUMMARY JUDGMENT**

This suit arises out of alleged violations by Defendant Town of Wolcott ("Wolcott") of Plaintiff Michael Rinaldi's procedural due process rights pursuant to the Fifth and Fourteenth Amendments.[1]  Mr. Rinaldi filed his Amended Complaint [Doc. # 21] on July 15, 2013, claiming that Wolcott deprived him of his liberty and property interests in his variance "without notice and a right to be heard."  (Am. Compl. ¶ 1.)  Wolcott now moves [Doc. # 37] for summary judgment.[2]  Oral arguments were heard on November 5, 2014.  For the following reasons, Defendant's motion for summary judgment is granted.

I.     **Background**

The only factual dispute in this case concerns whether or not Mr. Rinaldi sold an automobile within one year of the last automobile sale by the prior owner of the property, Nelson Dingwell.  The rest of the facts are undisputed, as stated by the parties in their Local Rule 56(a)1 and 56(a)2 statements.

---

[1] Plaintiff's Amended Complaint also alleges violations of his substantive due process rights, but those allegations have been withdrawn.  (*See* [Doc. # 25].)

[2] Defendant's prior motions for summary judgment [Doc. ## 33, 34, and 35] are denied as moot.

### A. The Property

Mr. Rinaldi purchased the property at issue here, 638 Woodtick Road in Wolcott, Connecticut, from Nelson Dingwell in April 1997.  (Pl.'s Loc. R. 56(a)2 Stmt. [Doc. # 37-1] ¶ 2; Def.'s Loc. R. 56(a)1 Stmt. [Doc. # 33-2] ¶ 2.)  The property is located in a residential zone, designated R-40 by the Wolcott zoning regulations.  (Pl.'s 56(a)2 ¶ 6; Def.'s 56(a)1 ¶ 6.)  Under the regulations, properties in R-40 zones may be used "as of right" as single family dwellings, rental rooms in a dwelling, and farm stands.  (Pl.'s 56(a)2 ¶ 7; Def.'s 56(a)1 ¶ 7; see Ex. G [Doc. # 34-7] to Def.'s 56(a)1.)  Such properties may not be used for the sale of automobiles or as motor vehicle repair garages.  (*Id.*)

Initially upon purchasing the property, Mr. Rinaldi "sought to operate an antique business [as well as a] . . . chainsaw[], mini bike[] and lawnmower[]" repair shop there.  (Pl.'s 56(a)2 ¶ 9; Def.'s 56(a)1 ¶ 9.)  However, on or about November 5, 1998, he received a letter from Deputy Zoning Enforcement Officer ("Dep. ZEO") James Testa, notifying him that because his property was zoned as residential, he would have to remove all evidence of the business from the exterior of his house within fifteen days.  (Pl.'s 56(a)1 ¶ 11; Def.'s 56(a)1 ¶ 11; see Ex. H [Doc. # 34-8] to Def.'s 56(a)1.)  On or about December 11, 1998, Mr. Rinaldi received a second letter, this time from Zoning Enforcement Officer ("ZEO") Harry Fitzgerald informing him that the Wolcott Planning and Zoning Commission ("Commission") had discussed his plans to operate an antiques business and small engine repair business on his property and had determined that such uses were impermissible on a residential property.  (Pl.'s 56(a)2 ¶ 13; Def.'s 56(a)1 ¶ 13; see Ex. J [Doc. # 34-10] to Def.'s 56(a)1.)  The letter "further informed Plaintiff that placing a railroad car/caboose on the property [as he had proposed] would violate the regulations."

2

(Ex. J to Def.'s 56(a)1.)  Nonetheless, after receiving Mr. Fitzgerald's letter, Plaintiff placed a train caboose on the property where it remains today despite orders from the Commission to remove it.  (Pl.'s 56(a)2 ¶ 17–18; Def.'s 56(a)1 ¶ 17–18.)

### B. March 3, 1999 Public Hearing before the Zoning Commission – Request for Zone Change

On January 4, 1999, Mr. Rinaldi filed an application for a public hearing with the Commission for a zone change from R-40 to General Commercial.  (Pl.'s 56(a)2 ¶ 19; Def.'s 56(a)1 ¶ 19; *see* Ex. M [Doc. # 34-13] to Def.'s 56(a)1.)  The hearing was held on March 3, 1999.  (Pl.'s 56(a)2 ¶ 24; Def.'s 56(a)1 ¶ 24; *see* Ex. E [Doc. # 34-5] to Def.'s 56(a)1.)  As revealed by the meeting minutes, Mr. Rinaldi sought permission "to open [former owner, Mr. Dingwell's business] back up to what it was, a small repair shop, and maybe a few antiques, and that is it."  (Ex. E to Def.'s 56(a)1 at 2.)  He argued that he had a right to do so because Mr. Dingwell's usage of the property for bicycle and lawn mower repairs was a non-conforming use that pre-existed the residential zoning regulations and that when the property changed hands from Mr. Dingwell to Mr. Rinaldi, "the business never stopped, except for a short period of time."  (*Id.*)  However, because Mr. Rinaldi had applied for a zone change and not for recognition of a nonconforming use, the Commission notified him that he would have to return with proof "that what he [wa]s doing [wa]s a continued use, it was not interrupted, and it was not the intention of the previous owner to abandon it."  (*Id.* at 8.)  Mr. Rinaldi withdrew his petition for a zone change. (*Id.* at 9.)

### C. October 20, 1999 Hearing before Zoning Commission – Request for Nonconforming Use

On April 8, 1999, Mr. Rinaldi, through Attorney Sebastian Ciarcia, sent a letter to ZEO Fitzgerald asking him to review certain documents relating to Mr. Dingwell's prior uses of the property. (Ex. O [Doc. # 34-15] to Def.'s 56(a)1.) Among the documents was a list "of all items sold and services provided by [Mr. Dingwill within] one year of [Mr. Rinaldi's purchase of the property], which records were kept in a thick ledger maintained by the previous owner and now in the possession of Mr. Rinaldi." (*Id.*) The list reads as follows:

> Sale of chips pg 98
> Sale of Icecreme [sic] pg 98
> Sale of soda pg 99
> Sale of out door [sic] sports pg 101
> Sale of range oil pg 101
> Sale of keys
> Pin ball income
> Welding income
> Pay phone
> Buying + selling motorcycle
>
> Dealer
> Dealer Colombia B[i]c[y]cle
> Dealer Mac Chainsaw McCuloch
> Dealer Jacupson Equ.
> Dealer Snow Bird snow blower
> Dealer Orline motors for bicycle
> [illegible] for pedal cars

(*Id.*) Attorney Ciarcia concluded his letter by affirming: "My client intends no additional uses for the property." (*Id.*)

By letter dated June 1, 1999, Dep. ZEO Testa notified Attorney Ciarcia that the Commission had approved "a home occupation for the premises of 638 Woodtick Road to be bicycle and lawn mower repair," but the vehicles, caboose, and poultry on Mr. Rinaldi's property had to be removed.  (Ex. P [Doc. # 34-16] to Def.'s 56(a)1.)  Attorney Ciarcia replied on June 3, 1999, protesting that "Mr. Dingwell [had] used the premises for much more than to repair bicycles" and reiterating that Mr. Rinaldi "intends no additional uses [beyond those listed in the letter to ZEO Fitzgerald] for the property."  (Ex. Q [Doc. # 34-17] to Def.'s 56(a)1.)  When Dep. ZEO Testa refused to further discuss the matter (Ex. R [Doc. # 34-18] to Def.'s 56(a)1), and the Commission issued a cease and desist order against Mr. Rinaldi (Ex. T [Doc. # 34-20] to Def.'s 56(a)1), Attorney Ciarcia requested a hearing before the Commission (Ex. U [Doc. # 34-21] to Def.'s 56(a)1).

ZEO Fitzgerald scheduled a hearing for October 20, 1999 and requested that in advance of the meeting, Attorney Ciarcia submit a detailed list of past, current, and future uses applicable to Mr. Rinaldi's property.  (Ex. V [Doc. # 34-22] to Def.'s 56(a)1.)  Attorney Ciarcia submitted to the Commission the following list:

> I.   PAST USES DURING TIME MR. DINGWELL OWNED THE PROPERTY:
>
> 1. Storage of firewood in open shed
> 2. Repair small engines, i.e. lawnmower, chainsaw, minibikes, go-karts, weed trimmers, water pumps, generators, outboard motor, snowblowers
> 3. Repairs and sales of used motorcycles
> 4. Repair and sales of Columbia bicycles
> 5. Sale of ice cream, soda, candy and potato chips
> 6. Key cutting
> 7. Pinball machine
> 8. Sale of range oil

9. Sale of used snowblowers
10. McCulloch chainsaw dealer
11. Sale of Yardman power equipment
12. Sale of live bait
13. Sale of childrens [sic] peddle cars
14. Parking in front of the shop
15. Sign advertisement.

II. PAST USES TO CONTINUE BASED ON CLEARLY DEMONSTRABLE LEGAL USES DURING THE TIME MR. DINGWELL OWNED THE PROPERTY:

1. Repair small engines outlined above
2. Repair and sales of used motorcycles
3. Sale of soda through vending machine
4. Sale of potato chips
5. Repair and sale of used snowblowers
6. Repair and sale of used chainsaws
7. Sale of childrens [sic] peddle cars
8. Sign advertisement
9. Open shed for storage of firewood
10. Parking in front of shop.

III. PROPOSED FUTURE USES

1. No future uses

(Ex. W [Doc. # 34-23] to Def.'s 56(a)1.)

On November 1, 1999, the Commission notified Mr. Rinaldi that it had unanimously voted to permit him to use his property for the majority of the uses Attorney Ciarcia had outlined in his letter, with the exception of "the repair of any motor vehicle." (Ex. X [Doc. # 34-24] to Def.'s 56(a)1.) Plaintiff appealed the decision on the basis that "The premises has been, and continues to be, used for the repair and sales of

used motorcycles" and as such, it is a non-conforming use permitted under Article 12 of the zoning regulations.  (*Id.*)

### D. January 12, 2000 Public Hearing before Board of Appeals – Appeal of Zoning Commission Decision re Motorcycles

Mr. Rinaldi's appeal was heard on January 12, 2000 by the Zoning Board of Appeals ("Board").  (*See* Ex. Y [Doc. # 34-25] to Def.'s 56(a)1.)  As memorialized in the minutes of the meeting:

> Mr. Rinaldi stated that he would like to keep a continual use business that has been in business since 1954.  Mr. Rinaldi further stated that the Zoning Commission is allowing him to do everything else that Mr. Dingwell use [sic] to do, except the repair of motorcycles. [Attorney Ciarcia then submitted evidence of Mr. Dingwell's repair and sale of used motorcycles, including Mr. Dingwell's business card, retail catalogues, invoices, ledger entries, and witness testimony.]
>
> Attorney Ciarcia . . . stated that it has clearly been demonstrated here before this Board that [Mr. Rinaldi's] intentions are not to repair or sell motor vehicles. . . .
>
> Attorney Ciarcia asked the Board to refer to the definition that is more applicable in this matter . . . in statute number 47, which is a definition of a motorcycle, which is more restrictive than a motor vehicle. . . .
>
> Attorney Ciarcia stated that his client does not seek anything to do with motor vehicles. . . .
>
> Attorney Ciarcia asked where it has ever been said that his client wants to repair motor vehicles.  Attorney Ciarcia asked where has it ever been produced any evidence to show a motor vehicle was even repaired.  Attorney Ciarcia asked where in the application that is presented as an appeal to this Board does it say anything about a motor vehicle, or a request to repair motor vehicles.  Attorney Ciarcia stated that it does not. . . .

>Attorney Ciarcia stated that his client is not seeking to sell or repair new motorcycles, definitely not motor vehicles, but motorcycles where is [sic] a specific component of a motor vehicle with specific limitations. . . .
>
>Mr. Testa stated that the second part to this issue that is before this Commission is the license which would entitle him to repair motorcycles, vehicles, motor vehicles, as classified under Title #14.
>
>Attorney Ciarcia stated he will not be able to be licensed to repair motor vehicles because it would be beyond the scope of the Zoning Board of Appeals to grant permission to repair motor vehicles when he did not present any evidence to show that motor vehicles were repaired before as a non-conforming use. It is motorcycles that he would be in a position to repair.

(*Id.*)

Mr. Rinaldi's appeal was discussed at the Zoning Board of Appeals' regular meeting on February 9, 2000.  (*See* Ex. Z [Doc. # 34-26] to Def.'s 56(a)1.)  During the meeting, Chairman John Synnott stated, "As long as we bear in mind that it is going to be used motorcycles [sic] and not motor vehicles, I would be inclined to grant this approval."  (*Id.*)  He added that although the question of Mr. Rinaldi getting a license to repair motor vehicles had come up during the public hearing,

>[i]f Mr. Rinaldi wanted to pursue that it would be something totally different.  This commission is not giving him permission for a State Motor Vehicle License for Sales or Repair.  Mr. Rinaldi would have to come back to Planning and Zoning and back to Zoning Board of Appeals because that is a separate issue.  We are not addressing that tonight. . . .
>
>During discussion, [sic] Michael Perrone asked if it was proven by documentation that this lot was given a variance to sell and repair used motorcycles.  Chairman John Synnott stated what we have is a legal non-conforming lot.

8

(*Id.*)  Upon motion by Michael Brennan, the Board voted to grant Mr. Rinaldi's request to use his property for the "location of a business for the repair and sale of used motorcycles and to carry on the business that was established there many years ago." (*Id.*)  After some discussion, however, the Board voted to amend the motion to add the following limitation: "location of a business for the repair and sale of –*limited to* used motorcycles." (*Id.*) (emphasis added.)   The Commission stipulated that "Mr. Rinaldi supply the commission with a notarized letter for our files stating that it is strictly used motorcycles only."  (*Id.*)

> The Public Notice of the decision read:
>
> At the regular meeting of the Wolcott Zoning Board of Appeals held on February 9, 2000, the following action was taken:
>
> Appeal #1791 – Michael Rinaldi, 638 Woodtick Road, GRANTED a variance to use the property address of 638 Woodtick Road for the proposed location of a business for repair and the sale of and limited to used motorcycles and to carry on the business that was established there many years ago, and to provide a notarized letter stating that he will be dealing with used motorcycles. . . .

(*Id.*)

### E.  Mr. Rinaldi's Applications for License to Sell/Repair Motor Vehicles

Thereafter, "on or about August 29, 2006, Plaintiff applied to the DMV for a Motor Vehicle . . . repairer license."  (Pl.'s 56(a)2 ¶ 71; Def.'s 56(a)1 ¶ 71; *see* Ex. CC [Doc. # 35-3] to Def.'s 56(a)1.)  In order to receive this license, Mr. Rinaldi needed ZEO David Kalinowski[3] to sign off on his application.  (*See* Pl.'s 56(a)2 ¶ 72; Def.'s 56(a)1 ¶ 72.) Aware that Mr. Rinaldi had been granted permission to use his property for the purposes

---

[3] Mr. Kalinowski had replaced Mr. Fitzgerald as ZEO.

of repairing motorcycles but not other motor vehicles, ZEO Kalinowski checked the box for "motorcycles only" when he signed the application. (Pl.'s 56(a)2 ¶ 73; Def.'s 56(a)1 ¶ 73; *see* Ex. CC to Def.'s 56(a)1.) However, the application the DMV received from Mr. Rinaldi "had both 'motorcycles only' and 'all motor vehicles' checked." (Pl.'s 56(a)2 ¶ 74; Def.'s 56(a)1 ¶ 74; *see* Ex. CC to Def.'s 56(a)1.) Upon observing this discrepancy, "[o]n April 17, 2008, ZEO Kalinowski sent a letter to the DMV [clarifying] that the original DMV application that he signed was for limited repairer and motorcycles." (Pl.'s 56(a)2 ¶ 75; Def.'s 56(a)1 ¶ 75; *see* Ex. DD [Doc. # 35-4] to Def.'s 56(a)1.)

On November 18, 2009, Mr. Rinaldi applied for a license to deal used cars. (Pl.'s 56(a)2 ¶ 76; Def.'s 56(a)1 ¶ 76; *see* Ex. FF [Doc. # 35-6] to Def.'s 56(a)1.) ZEO Kalinowski signed off on the application, noting that it was for "used motorcycles only," and then sent a letter to the DMV notifying it that "there are restrictions placed on the licensee's use of the property at 638 Woodtick Road [limiting such use to] the repair and sale of used motorcycles only." (Pl.'s 56(a)2 ¶ 77; Def.'s 56(a)1 ¶ 77; *see* Ex. GG [Doc. # 35-7] to Def.'s 56(a)1.) As a result, the "DMV never issued Plaintiff a license to sell automobiles." (Pl.'s 56(a)2 ¶ 83; Def.'s 56(a)1 ¶ 83; *see* Ex. DD [Doc. # 35-4] to Def.'s 56(a)1.)

Shortly after applying for the license to deal used cars, Mr. Rinaldi attempted to turn in to the Assessor's Office dealer plates and to request that the Town take two motor vehicles and two motorcycles off the tax records. (Pl.'s 56(a)2 ¶ 79; Def.'s 56(a)1 ¶ 79.) The Assessor's Office refused, noting that Mr. Rinaldi had not been approved to sell motor vehicles. (Pl.'s 56(a)2 ¶ 80; Def.'s 56(a)1 ¶ 80.) Upon learning of this incident, ZEO Kalinowski wrote to the DMV to inquire as to how Plaintiff "was allowed to receive

a motor vehicle dealer plate when it was not permitted per the restrictions [the Board had] placed on him." (Ex. HH [Doc. # 35-8] to Def.'s 56(a)1.)

### F. May 11, 2010 Application to Zoning Commission for Permit for Auto Sales and Repair

On May 11, 2010, Mr. Rinaldi applied to the Zoning Commission to have "the restriction of auto repair and sales lifted from an allready [sic] existing motorcycle repair and sales [sic] that is licensed from the state of CT." (Pl.'s 56(a)2 ¶ 84; Def.'s 56(a)1 ¶ 84; *see* Ex. II [Doc. # 35-9] to Def.'s 56(a)1.)  By letter dated July 1, 2010, ZEO Kalinowski denied Plaintiff's request, explaining that the property "was previously approved by the Zoning Board of Appeals for used motorcycle repair and sales only" and that any expansion of use would violation Regulation 4.4.2 prohibiting the enlargement or expansion of nonconforming uses. (Ex. JJ [Doc. # 35-10] to Def.'s 56(a)1.)

### G. August 11, 2010 Public Hearing before Board of Appeals – Appeal re Commission's Denial of Permit for Auto Sales and Repair

Plaintiff appealed the denial on July 19, 2010, arguing that his variance gave him the right to "carry on the business that was established [on his property] many years ago," and he had proof that Mr. Dingwell's business had "sold and repaired autos." (Ex. II to Def.'s 56(a)1.)  A public hearing on Mr. Rinaldi's appeal was held before the Board of Appeals on August 11, 2010. (*See* Ex. LL [Doc. # 35-12] to Def.'s 56(a)1.)  During the hearing, Mr. Rinaldi presented evidence that he alleged proved that Mr. Dingwell had sold and repaired cars on the property. (*Id.* at 3–6.)  Mr. Rinaldi averred that he had

11

"been fixing cars and motorcycles" on the property since he purchased it[4] and had "sold, in 13 years, three cars."[5]  (*Id.* at 7.)  At the regular meeting of the Board of Appeals that followed the public hearing, the Board voted to uphold the Commission's ruling denying Mr. Rinaldi's request as an illegal expansion of a nonconforming use.  (*See id.* at 40.)  Mr. Rinaldi "did not appeal the [Board's] . . . decision to the Connecticut Superior Court."  (Pl.'s 56(a)2 ¶ 103; Def.'s 56(a)1 ¶ 103.)

### H. June 11, 2012 Letter Requesting Another Hearing re Auto Sale and Repair

Nearly two years later, on June 11, 2012, Mr. Rinaldi's new attorney, Frank Cannatelli, wrote to the Board of Appeals requesting "a hearing to clarify the language [of Mr. Rinaldi's variance] to include the use of the property for sale and repair of used cars."  (Ex. II to Def.'s 56(a)1)  As admitted by Plaintiff, this letter "was the only notice sent to and received by the ZBA requesting clarification and a hearing."  (Pl.'s 56(a)2 ¶ 105.)  Less than three months after sending the June 2012 letter, Attorney Cannatelli "sent notice of his intent to file a lawsuit pursuant to 42 U.S.C. Section 1983" dated October 8, 2012.  (Pl.'s 56(a)2 ¶ 106; Def.'s 56(a)1 ¶ 106; *see* Ex. PP [Doc. # 35-16] to Def.'s 56(a)1.)

---

[4] In Plaintiff's Local Rule 56 statement, he admits that, contrary to his assertion before the Board of Appeals, "[w]ith the exception of a bus that broke down on Plaintiff's property [which Mr. Rinaldi repaired for free], he has not repaired automobiles on the property since the date of purchase."  (Pl.'s 56(a)2 ¶ 98.)

[5] In his deposition, Mr. Rinaldi stated that the first car he sold was in 2000, "more than a year after [he] purchased the property."  (Pl.'s 56(a)2 ¶ 93; Def.'s 56(a)1 ¶ 93; *see* Ex. A to Def.'s 56(a)1 at 50.)

II.     **Discussion**[6]

Defendant argues that the Court should grant summary judgment for two reasons: (1) Plaintiff's claim is barred by the statute of limitations; and (2) Plaintiff's procedural due process rights were not violated.

A. **Statute of Limitations**

Defendant asserts that Plaintiff's § 1983 claims are barred by the statute of limitations. The parties agree that the statute of limitations for § 1983 suits is three years. (*See* Mem. Supp. Summ. J. [Doc. # 33-1] at 16; Opp. to Summ. J. [Doc. # 41] at 3); *see also Lawson v. E. Hampton Planning & Zoning Comm'n*, 3:07CV1270 (AHN), 2008 WL 4371297, at *6 (D. Conn. Sept. 22, 2008) ("Under Connecticut law, the statute of limitations for § 1983 cases is the three-year period set forth in Conn. Gen. Stat. § 57–577"). However, they disagree about the date on which the claims began to accrue. Although state law governs the length of the statute of limitations for § 1983 actions,

---

[6] Summary judgment is appropriate where, "resolv[ing] all ambiguities and draw[ing] all permissible factual inferences in favor of the party against whom summary judgment is sought," Holcomb v. Iona Coll., 521 F.3d 130, 137 (2d Cir. 2008), "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Williams v. Utica Coll. of Syracuse Univ., 453 F.3d 112, 116 (2d Cir. 2006) (quotation marks omitted). "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" Bouboulis v. Transp. Workers Union of Am., 442 F.3d 55, 59 (2d Cir. 2006) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). When considering a motion for summary judgment, the Court may consider depositions, documents, affidavits, interrogatory answers, and other exhibits in the record. Fed. R. Civ. P. 56(c).

federal law "determines when a cause of action accrues under § 1983. Under federal law, a claim accrues once the 'plaintiff knows or has reason to know of the injury which is the basis of his action.'" *Lawson*, 2008 WL 4371297, at *6 (quoting *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002)).

Defendant argues that since "Plaintiff knew or should have known of [Wolcott's refusal to allow him to use his property for car sales and repairs] when ZEO Kalinowski checked 'motorcycles only' . . . on August 29, 2006 . . . if not before, in 2000, when he got the approval for motorcycles only," or at the very latest in 2009 "when the Assessor's office refused his attempts to turn dealer plates in," (Mem. Supp. at 16–17), the statute of limitations began to run in 2000, 2006, or 2009. (*See* Reply [Doc. # 42] at 3 n.2.) Defendant's argument with regard to Mr. Rinaldi's 2000 application is unpersuasive. Because Plaintiff specifically stated in 2000 that he was not seeking to use his property for car sales and repairs, the Board explicitly did not address whether the property could be used for those activities. (*See* Ex. Z to Def.'s 56(a)1.) Indeed, as Plaintiff noted at oral argument, the Board commented that it was "not addressing that tonight" and if Mr. Rinaldi wanted to use his property for car sales and repair he "would have to come back . . . because that is a separate issue." (*Id.*) This "invitation" to return, as Plaintiff apparently perceived it, cannot be reasonably deemed to have given Plaintiff notice that Wolcott would not permit him to use his property for car sales and repair.

Similarly, it is unclear whether Plaintiff was alerted in 2006 that he would be unable to sell and repair cars. Although ZEO Kalinowski checked "motorcycles only" on Plaintiff's application (Pl.'s 56(a)2 ¶ 73; Def.'s 56(a)1 ¶ 73; *see* Ex. CC to Def.'s 56(a)1), the record does not reveal whether Mr. Rinaldi was nonetheless able to obtain a license to

14

repair cars at that time. ZEO Kalinowski's letter to the DMV clarifying that Mr. Rinaldi had not been approved to repair cars was not sent until April 2008 (Ex. DD to Def.'s 56(a)1), and the record does not reveal when Mr. Rinaldi was notified about the letter. However, by December 2009, it is evident that Plaintiff did have notice that the Town had refused to permit him to use his property for car sales and repair. Mr. Rinaldi stated in his deposition that he returned to the Zoning Board in 2010 because when he attempted to turn in dealer plates to the Assessor's office, he was told that he was not allowed to be selling or repairing cars. (Ex. A to Def.'s 56(a)1 at 64–65.) Although Mr. Rinaldi does not state on what date this interaction occurred, it was certainly before December 1, 2009 because on that date Mr. Kalinowski wrote to the DMV seeking an investigation into how Mr. Rinaldi had obtained the dealer plates. (Ex. HH to Def.'s 56(a)1.) Therefore, in order for Mr. Rinaldi's suit to be timely, he would have had to commence his suit on or before December 1, 2012. Because Mr. Rinaldi initiated this suit on March 13, 2013 (*see* Notice of Removal [Doc. # 1]), it is barred by the statute of limitations. Even if Plaintiff's claim were timely however, it fails on the merits.

### B. Plaintiff's Procedural Due Process Claim

Plaintiff contends that his Fifth and Fourteenth Amendment procedural due process rights were denied by Wolcott's refusal to permit him to demonstrate that Mr. Dingwell had used his property for the sale and repair of cars. Under Supreme Court precedent, courts "examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Kentucky Depart. of Corrs. v. Thompson*, 490 U.S. 454, 460,

15

(1989) (internal citations omitted). With regard to the second step, "courts have usually held that the Constitution requires some kind of a hearing before the State deprives a person of liberty or property." *Norton v. Town of Islip*, 239 F. Supp. 2d 264, 272 (E.D.N.Y. 2003) *aff'd*, 77 F. App'x 56 (2d Cir. 2003).

### 1. Plaintiff's Liberty Interest

Plaintiff claims in his brief to have "a liberty interest to sell and repair cars if permitted to prove it," but in describing this interest, he begins by stating that his claim relies on a property interest from the variance. (Opp. Summ. J. at 5.) He goes on to assert that "there should be a guarantee of the right to proceed" to a hearing before the Board. (*Id.*) At oral argument, Plaintiff added that he has a liberty interest in pursuing the enterprise of his choice. To the extent Plaintiff is really alleging a property interest, that interest is addressed below. To the extent Plaintiff claims to have a liberty interest in having a hearing, that is not a cognizable interest for purposes of procedural due process. As cogently explained by the Seventh Circuit:

> If a right to a hearing is a liberty interest, and if due process accords the right to a hearing, then one has interpreted the Fourteenth Amendment to mean that the state may not deprive a person of a hearing without providing him with a hearing. Reductio ad absurdum.

*Shango v. Jurich*, 681 F.2d 1091, 1101 (7th Cir. 1982).

Finally, to the extent Plaintiff asserts a liberty interest in pursuing the enterprise of his choice, that interest is far narrower than Plaintiff appears to believe. While the Supreme Court has recognized a liberty interest in engaging "in any of the common occupations of life," *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 572 (1972), it has also been clear that this right is circumscribed. There is no liberty interest in

16

continued employment, for example. *Id.* at 575 ("It stretches the concept too far to suggest that a person is deprived of 'liberty' when he simply is not rehired in one job but remains as free as before to seek another."). Nor is there a liberty interest in obtaining a business license or permit, *Minneapolis Auto Parts Co. v. City of Minneapolis*, 572 F. Supp. 389, 395 (D. Minn. 1983), or in engaging in one's chosen occupation in an area in which it is prohibited, *Perry v. City of Chicago*, 480 F. Supp. 498, 50–02 (N.D. Ill. 1979). Like the plaintiff in *Perry*, a peddler who challenged a city ordinance banning peddling in downtown Chicago, Plaintiff here has failed to establish that the Zoning Board's decisions "prohibit [him] from engaging in his chosen occupation." *Id.* Mr. Rinaldi is free to engage in the sale and repair of automobiles; he simply may not do so on land zoned as residential.

2. **Plaintiff's Property Interest**

Plaintiff maintains that his variance gives him a property interest in carrying on any business that Mr. Dingwell had carried on at the property. (Am. Compl. ¶ 1.) By refusing to grant him an opportunity to demonstrate that Mr. Dingwell had sold and repaired cars on the property, Plaintiff alleges, Wolcott effectively revoked his variance. (*See* Opp. Summ. J. at 4.)

Although Plaintiff does have a property interest in using his property in the ways permitted by the variance, *see Norton*, 239 F. Supp. 2d at 273 (finding that the plaintiff had a significant property interest in the nonconforming use of his property the town had previously sanctioned); *see Gavlak v. Town of Somers*, 267 F. Supp. 2d 214, 224 (D. Conn. 2003) ("[T]he plaintiffs have satisfied the first prong by alleging the deprivation of a constitutionally protected property interest, namely, the maintenance of a

17

nonconforming use."), his apparent interpretation of the variance as entitling him to return to the Commission or Board of Appeals as many times as he would like over a period of more than a decade to establish piecemeal Mr. Dingwell's prior uses of the property, is not reasonable. While it is true that the language of the variance is broad on its face (giving Mr. Rinaldi the right "to carry on the business that was established there many years ago"), when read, as Plaintiff conceded at oral argument it should be, in conjunction with Mr. Rinaldi's application and the minutes of the Board of Appeals meeting granting the application, its meaning is clearly more circumscribed.

In his 1999 application for recognition of nonconforming uses, Plaintiff sought permission to continue ten nonconforming activities that he alleged Mr. Dingwell had engaged in on the property:

1. Repair small engines [i.e. lawnmower, chainsaw, minibikes, go-karts, weed trimmers, water pumps, generators, outboard motor, snowblowers]
2. Repair and sales of used motorcycles
3. Sale of soda through vending machine
4. Sale of potato chips
5. Repair and sale of used snowblowers
6. Repair and sale of used chainsaws
7. Sale of childrens [sic] peddle cars
8. Sign advertisement
9. Open shed for storage of firewood
10. Parking in front of shop.

(Ex. W to Def.'s 56(a)1.) When the Commission denied him permission to use the property for the repair and sale of used motorcycles, Plaintiff appealed the decision. At the Board of Appeals hearing, Plaintiff was emphatic that: "[his] intention[] [was] not to repair or sell motor vehicles;" if the Board approved his application, he would be able to

18

obtain a license for the repair of motorcycles only, and not of cars; he did "not seek anything to do with motor vehicles;" his appeal did not "say anything about a motor vehicle, or a request to repair motor vehicles;" and he was "definitely not" seeking to sell or repair "motor vehicles." (Ex. Y to Def.'s 56(a)1.)

During the Board's discussion of Mr. Rinaldi's appeal, Chairman Synnott expressly conditioned his support for Mr. Rinaldi's application on Mr. Rinaldi using his property to sell and repair "used motorcycles and not motor vehicles." (Ex. Z [Doc. # 34-26] to Def.'s 56(a)1.) He added that "[i]f Mr. Rinaldi wanted to pursue [using his property for the sale and repair of motor vehicles] it would be something totally different." (*Id.*) If any doubt remained about the Board's position, Chairman Synnott quashed it by stating outright: "This commission is not giving [Mr. Rinaldi] permission for a State Motor Vehicle License for Sales or Repair." (*Id.*)

Mr. Rinaldi returned to the Commission in 2010, this time seeking to expand his nonconforming use to include the repair and sale of cars. (*See* Ex. II to Def.'s 56(a)1.) The Commission rejected the idea outright as an unlawful expansion of a nonconforming use. (*See* Ex. JJ to Def.'s 56(a)1.) Mr. Rinaldi appealed, and after a public hearing during which Mr. Rinaldi was given an opportunity to submit evidence and state his case, the Board of Appeals voted to uphold the Commission's decision. (*See* Ex. LL to Def.'s 56(a)1.)

In light of this background, it is disingenuous for Mr. Rinaldi to claim that the Board's inclusion of the language "to carry on the business that was established there many years ago" referred to any activities other than those clearly outlined by Mr. Rinaldi in his original application. However, even if the variance did give Mr. Rinaldi the right to

endless numbers of petitions before the Board, Mr. Rinaldi has not demonstrated that he was deprived of any due process.

### 3. Due Process

Plaintiff claims that his due process rights were violated because he was not given an opportunity to present his claims to the Board. As outlined above, however, Plaintiff *did* have a meaningful opportunity in 2010 to make his claim and present evidence and witnesses to the Board in support of his petition to use his property for car sales and repairs. Plaintiff does not identify any flaws in the process he received; he simply believes he is entitled to another hearing. However, as Defendant asserted at oral argument, there is no constitutional right to process-on-demand. The Fifth and Fourteenth Amendments prohibit the denial of a cognizable liberty or property interest without due process. Plaintiff, believing he was denied liberty and property rights in 2009, when the ZEO blocked his application for a license to sell automobiles, sought a hearing before the Commission and subsequently Board of Appeals. Those hearings were held. The Constitution does not give Mr. Rinaldi a right to continuously return to the Board to protest an alleged deprivation for which he has already received process.

## III. Conclusion

For the foregoing reasons, Defendant's Motion [Doc. # 37] for Summary Judgment is GRANTED.

IT IS SO ORDERED.

    /s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 13th day of November, 2014.